A. Morris Krensky and Milton J. Krensky, trading as A. M. Krensky & Brother, Appellees, v. Harold P. Lynch, Appellant.

## Gen. No. 30,462.

1. BROKERS—*sufficiency of evidence to show procuring of party ready, willing and able to make loan on stated conditions.* Evidence in an action for commissions for negotiating a loan held to sustain a verdict for plaintiffs on the issue whether they procured a party ready, willing and able to make the loan on the conditions stated in defendant's application.

2. BROKERS—*sufficiency of evidence to show absence of demand by brokers for change in conditions of application for loan.* Evidence in an action for commissions for negotiating a loan held to sustain a verdict for plaintiffs on the issue whether they demanded terms other than those stated in defendant's application for the loan as a condition to making the same.

3. BROKERS—*sufficiency of evidence to show unjust refusal of customer to complete loan after application therefor accepted.* Evidence in an action for commissions for negotiating a loan held to sustain a verdict for plaintiffs on the issue whether defendant refused to take the loan after his application therefor had been accepted.

4. BROKERS—*instructions in action for commission for negotiating loan held properly refused.* Instructions in an action to recover

commissions for negotiating a loan held properly refused because misleading and not correctly stating the law.

5. BROKERS—*propriety of instruction in action for commissions for negotiating loan measuring damages by rate of commission stated in application for loan.* An instruction, in an action for commissions for negotiating a loan, that the measure of plaintiffs' recovery should be the rate of commission stated in the application for the loan, and that the fact, disclosed by the evidence, that plaintiffs were under agreement with the prospective lenders to divide such commission with them in the event the loan was made, was immaterial and should be disregarded, held not error, although the loan was not made, the defendant having refused to complete the transaction.

6. BROKERS—*sufficiency of evidence to support verdict for plaintiffs in action for commissions for negotiating loan.* In an action to recover commissions for negotiating a loan, the nonconsummation of which was due to defendant's refusal to complete the transaction, a verdict for the full amount of the commissions computed at the rate stated in the application for the loan was not excessive, although there was evidence that if the loan had been made plaintiffs were under obligation to divide the stated commission with the prospective lenders.

Appeal by defendant from the Superior Court of Cook county; the Hon. EDWARD M. MANGAN, Judge, presiding. Heard in the second division of this court for the first district at the October term, 1925. Affirmed. Opinion filed March 16, 1926.

I. B. PERLMAN, for appellant; ISIDORE GOODMAN and AVERN B. SCOLNIK, of counsel.

LEVINSON, HOFFMAN & REIN, for appellees; THEODORE E. REIN, of counsel.

MR. JUSTICE GRIDLEY delivered the opinion of the court.

On June 13, 1925, in an action in assumpsit, plaintiffs recovered a judgment for $3,000, after verdict, against defendant in said superior court for commissions for negotiating a loan of $50,000 on certain Chicago real estate, improved by an apartment building and owned by defendant, which loan defendant after-

wards refused to accept. It is sought by this appeal to reverse the judgment.

On January 21, 1924, plaintiffs were engaged in the business, as brokers, in Chicago, of negotiating loans on real estate, and on that day, in their office, defendant signed a written application, wherein he authorized them to negotiate for him "a bond issue mortgage loan" for $50,000 on said property, for the period of 5 years at the interest rate of 6 per cent per annum, and agreed to pay them for so doing a commission of 6 per cent on the amount of the loan ($3,000), and usual expenses. It is stated in the application that "fire insurance in the amount of $50,-000 is to be placed by you (plaintiffs) during the pendency of the loan," and that "this application, unless accepted by you within five days, Sundays and holidays excepted, shall become void." Plaintiffs immediately negotiated with the firm of H. P. Kransz & Co., mortgage brokers in Chicago, in the endeavor to get it to make the loan, and on the following day, after viewing the property, etc., Kransz & Co. notified plaintiffs that they would loan to defendant the $50,-000 requested, and plaintiffs, within the five days, notified defendant in writing that they had accepted defendant's application. Shortly thereafter defendant called at their office and an interview was had concerning the details of consummating the loan. Defendant testified that at this interview Milton J. Krensky demanded the placing of more insurance than the $50,000 mentioned in the application, and that as a result of this demand he (defendant) shortly thereafter refused to take the loan and further negotiations with plaintiffs ceased. Said Krensky denied that any such demand was made. There was evidence tending to show that the firm of Kransz & Co. was at all times ready, willing and able to loan to defendant the $50,000 on the terms mentioned in the application.

On the questions whether plaintiffs procured a

party who was ready, willing and able to loan $50,000 to defendant on the property according to the terms stated in his application, and did not demand of defendant other terms as to the amount of insurance, and whether defendant refused without just cause to take the loan after his application therefor had been accepted, we are of the opinion that the verdict is amply sustained by the evidence.

Complaint is made that the court erred in refusing to give two certain instructions offered by defendant. They related to the question of plaintiffs' alleged demand for more insurance than the amount mentioned in the application. They were misleading and did not correctly state the law and were properly refused.

Defendant's counsel also contend that the verdict and judgment are excessive. This contention is based upon certain testimony, brought out upon cross-examination, of plaintiffs' witnesses, Milton J. Krensky and Harry M. Kransz (a member of the firm of Kransz & Co.), to the effect that plaintiffs and the firm had agreed upon a certain division of the stipulated commissions of $3,000, in case said loan was made to defendant, which division was 4¾ per cent (or $2,375) to Kransz & Co., and 1¼ per cent (or $625) to plaintiffs. And in this connection defendant's counsel also contend that the court erred in refusing to give a certain instruction offered by defendant, and in giving two other instructions offered by plaintiffs. The refused instruction is to the effect that if the jury find from the evidence that plaintiffs had agreed with the firm of Kransz & Co. to allow it a portion of the commission provided for in the application, and if the jury further find that plaintiffs are entitled to recover in the case, then, in any event, the verdict in plaintiffs' favor "should not be for more than the sum of money which plaintiffs would themselves receive if said loan was consummated." The given instructions are to the effect that, if the

jury find the issues for plaintiffs, the measure of damages "is the rate of commission set forth in the application for the loan introduced in evidence," and that the fact, that plaintiffs had an arrangement with said firm of Kransz & Co. to divide or share said commission, "is immaterial," and the jury should disregard said arrangement, since it is not for them to consider what the plaintiffs would do with such commission after its receipt. In support of their contentions defendant's counsel argue that, if the judgment for $3,000 is upheld and the amount paid, plaintiffs will obtain more money by reason of defendant's breach of his contract in not accepting the loan than they would have obtained had no breach occurred and the loan had been consummated.

We are of the opinion that, under the facts and circumstances in evidence, the verdict and judgment are not excessive, and that counsels' further contention, that the court committed prejudicial error in the rulings on the instructions referred to, is without merit. Counsel have cited in support of their contentions certain cases, holding in substance that, in suits for damages for breach of a contract by a defendant, in determining the proper measure of damages, the cost of performance by the plaintiff should be deducted, where the necessity of such performance as well as the payment of such cost has been obviated by defendant's breach. The cited case of *Kilpatrick v. Inman,* 46 Colo. 514, is illustrative of counsels' contentions. In that case, plaintiff, a liveryman, had agreed to furnish to defendant "a rig and driver for five days at $5.50 per day" to take her and party to a distant point, but she afterwards breached the contract and refused to take the rig and, for reasons of her own, secured one from another liveryman. Plaintiff sued and obtained judgment against her for $27.50, the full sum he would have been entitled to had he been allowed to perform his part of the contract and

furnish the team. In reversing the judgment and remanding the cause the reviewing court held that the judgment was excessive, saying (p. 517) : ''The plaintiff, to have made the trip, would have been to the further expense of his driver, the expense of the return trip, together with the loss of the use of the team during the period of time so consumed, as well as the ordinary wear and tear to the outfit during this period. The result of this judgment is to award him his full contract price, allowing him the use of the outfit during the period it would have been gone, and the saving of the incidental expenses. In other words, a greater margin or profit by the alleged breach of the contract than he could have made had it been performed.'' In another cited case—*Finck v. Menke,* 64 N. Y. Supp. 38—it appears from the opinion that the plaintiff agreed to furnish the defendant a mortgage loan at a cost of $130, *which was to cover all expenses, including lawyer's fees* as well as brokerage, that the defendant refused to accept the loan, and that a judgment was rendered against him for $130. The reviewing court reversed the judgment, holding that it was excessive, and saying (p. 39) : ''Where a breach of contract occurs, the aggrieved party is not always entitled, by way of damages, to the stipulated compensation.  *  *  *  It is obvious that this judgment is more than the plaintiff could hope to receive if the entire transaction had been consummated. The estimated or probable legal charges and the other expenses incidental to closing the loan, all of which were to be borne by the plaintiff, were evidently not considered in determining the extent of plaintiff's damages.''

We do not think that these decisions, as well as other somewhat similar ones cited by counsel, are applicable to the facts of the present case, where it appears that plaintiffs fully performed the contract on their part, *i. e.,* negotiated the loan, and procured a

party (Kransz & Co.) who was ready, willing and able to make the loan, in the amount and according to the terms mentioned in defendant's application, and so notified defendant. In that application defendant agreed that if plaintiffs negotiated the loan he would pay them a commission of 6 per cent ($3,000) on the amount of the loan, and usual expenses. Plaintiffs were not to pay any expenses out of the amount of the stipulated commissions. As it seems to us, plaintiffs have earned these commissions. It was wholly because of defendant's unwarranted act that the loan was not consummated.

In 3 Sutherland on Damages (4th Ed.), sec. 683, p. 2500, it is said: "When a broker has found a customer, for that for which his principal has employed him to find a customer, the broker has performed his duty and has earned his commission, or, as the proposition is usually stated, if the person produced by the broker is able, ready and willing to buy, sell *or lend*, as the case may be, the broker's commission is earned." And, as we read the decisions, this is the rule in this state. (*Fox v. Ryan*, 240 Ill. 391, 396; *Telford v. Brinkerhoff*, 45 Ill. App. 586, 587; *Brillow v. Oziemkowski*, 112 Ill. App. 165, 167; *Masterson v. Knights*, 135 Ill. App. 548, 549.) In 9 Corpus Juris, p. 523, sec. 23, it is said: "The measure of damages to which a broker is entitled in case the principal refuses or fails to comply with his contract with the broker is the amount of commissions the broker would have received if the transaction had been completed."

In *Thorne v. Barth*, 114 N. Y. Supp. 900, it appears that plaintiff, a broker, had recovered a judgment in the trial court against defendant for commissions of $200; that the evidence disclosed that defendant had agreed to pay him that sum, as commissions, if he would secure a loan of $20,000 on defendant's house. A somewhat similar contention to that urged in the present case was made on appeal, but the court held

it to be without merit, saying (p. 900): "The agreement which the plaintiff claimed was made in this case was made with the plaintiff alone.    His claim was that the defendant agreed to pay him a commission of 1 per cent ($200) if he should succeed in securing the loan for him.    What the plaintiff was going to do with his commission after he got it, whether he was going to divide it with a third person, *is of no concern of the defendant*.    The latter discharges his obligation when he pays the plaintiff.    Whether a third person is entitled to half of it then is solely a question between that third person and the plaintiff."

In *Carter v. Webster*, 79 Ill. 435, plaintiff, a real estate broker, was employed by defendant to sell his land, or to procure an offer for it.    Through his efforts, and those of other real estate brokers whom he interested in the proposition, plaintiff procured an offer for the land from a certain party, which offer defendant accepted.    Plaintiff sued for his commissions and obtained judgment therefor against defendant.    On appeal the judgment was affirmed, our Supreme Court saying (p. 436): "The effect of what plaintiff did was to present to defendant a person who made an offer for the property that he was willing to and did accept.    This was all plaintiff undertook to do, according to his theory of the case, or all he had to do to earn his commissions."    It appears from the opinion that the evidence disclosed that a local custom existed among the real estate agents, to the effect that, when a piece of property was placed in the hands of one agent, if he had no customer for it, said agent went to other agents to solicit buyers, and that if a sale was effected it was usual to divide commissions.    Commenting upon this custom the court said (p. 436): "While the owner is not at all bound by such a custom, it is wholly immaterial to him what number of persons his own agent may employ to assist

him in finding a purchaser for his property, or what he pays them for their services in the premises."

Our conclusion is that the judgment of the superior court should be affirmed, and it is so ordered.

*Affirmed.*

BARNES, P. J., and FITCH, J., concur.